UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JARED KINKLE,                                    Case No. 13-11369

        Plaintiff,                          John Corbett O'Meara
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Michael Hluchaniuk
                                                 United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 16)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On March 27, 2013, plaintiff Jared Kinkle filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge John Corbett O'Meara referred this matter to the undersigned for the

purpose of reviewing the Commissioner's decision denying plaintiff's claim for

disability insurance benefits.  (Dkt. 4).  This matter is before the Court on cross-

motions for summary judgment.  (Dkt. 13, 16).

### B.   Administrative Proceedings

Plaintiff filed the instant claims for disability and disability insurance

benefits and supplemental security income on July 29, 2010, alleging disability beginning February 1, 2007.  (Dkt. 9-5, Pg ID 163-64, 170-73).  Plaintiff's claims were initially disapproved by the Commissioner on January 27, 2011.  (Dkt. 9-3, Pg ID 122-23).  Plaintiff requested a hearing and on August 17, 2011, plaintiff appeared, with counsel, before Administrative Law Judge ("ALJ") John Dodson, who considered the case de novo.  (Dkt. 9-2, Pg ID 71-98).  In a decision dated September 23, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 9-2, Pg ID 54-66).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on December 20, 2012, denied plaintiff's request for review.  (Dkt. 9-2, Pg ID 47-50); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1981 and was 29 years old at the time of the administrative hearing, and 25 years of age on the alleged disability onset date. (Dkt. 9-2, Pg ID 65, 74).  Plaintiff had past relevant work as a fast food worker,

telephone solicitor, and labor assembler.  (Dkt. 6-2, Pg ID 64).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of February 1, 2007.  (Dkt. 9-2, Pg ID 59).  At step two, the ALJ found that plaintiff's organic mental disorder and associated visual disturbances were "severe" within the meaning of the second sequential step.  (Dkt. 9-2, Pg ID 59). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 9-2, Pg ID 59-61).

The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to unskilled work; no concentrated exposure to hazards such as heights and machinery; only occasional superficial contact with the public; only occasional interaction with co-workers and supervisors; and no work where depth perception would be required.

(Dkt. 9-2, Pg ID 61-64).  At Step Four, the ALJ found that plaintiff was not able to perform his past relevant work.  (Dkt. 9-2, Pg ID 64).  The ALJ then found that jobs exist in significant numbers in the national economy that plaintiff can perform and concluded that plaintiff has not been under a disability since February 1, 2007, through the date of the decision.  (Dkt. 9-2, Pg ID 65-66).

**B.    Plaintiff's Claims of Error**

Plaintiff argues, as his first claim of error, that the ALJ made an erroneous credibility determination.  The ALJ stated in his decision that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Tr. 21).  Plaintiff contends, however, that based on his neuropsychological testing, along with his testimony at the hearing and the testimony of his supervisor, the ALJ should have determined that plaintiff was credible.

Plaintiff states that he was involved in motor vehicle accident in 2000, when he was 18 years old.  He was the only survivor of the accident and sustained lasting injuries, and his May 25, 2000 discharge records document his principal diagnosis to be: "blunt trauma secondary to motor vehicle accident; splenic rupture; liver laceration; closed head injury; pulmonary contusion; multiple facial lacerations and tongue lacerations; respiratory failure; small bowel obstruction secondary to intussusceptions; MRSA."  (Tr. 234).  Plaintiff further asserts that while he was in the hospital being treated for his injuries, he underwent the following procedures: "exploratory laparotomy; splenectomy; small bowel resection; tracheostomy; percutaneous endoscopic gastrostomy tube placement; bronchoscopy; laceration repair."  (Tr. 234).  Plaintiff states that during his

4

recovery, as a result of the traumatic brain injury that he suffered, he went through

several weeks with "varying levels of consciousness with agitation and continued

post-traumatic amnesia." (Tr. 333).

According to plaintiff, as a result of his traumatic brain injury, he continues

to suffer cognitive deficits. Plaintiff asserts that he underwent a

neuropsychological evaluation with Gordon J. Horn, Ph.D., on May 14, 2004,

which noted that plaintiff suffered from the inability to control his impulses and

poor judgment, that plaintiff was unable to maintain focus for the entire

examination, and that he began to disengage from the situation. (Tr. 333-35).

Plaintiff contends that Dr. Horn concluded that plaintiff had difficulty tolerating

"extensive situations where deficits can become more pronounced with fatigue,

and social interpretation becomes more difficult to master, which may be one

possible explanation for his eventual uncomfortableness when being tested over

time." (Tr. 337). Dr. Horn further opined that plaintiff's "deficits at this level of

cognition have serious implications for a positive outcome (e.g., being

independent)." (Tr. 337). Plaintiff argues that this testing, which was performed

four years after his injury, shows the continuation of his cognitive impairments.

Plaintiff asserts that his records also contain a letter from Dr. Horn dated

February 17, 2010, which plaintiff asserts outlines his continued struggle with his

cognitive deficits, in Dr. Horn stated that plaintiff required a structured program in

order to maintain even his current level of functioning, and recommended that plaintiff be placed in a neurobehavioral facility in order to receive intense therapy and training. (Tr. 213). Plaintiff further contends that records from the Communicare program note that plaintiff requires 24 hour emergency supervision with checks every 2 hours. (Tr. 208). Plaintiff states that he attends programs Monday through Friday and requires help to pay his bills and remember any daily tasks. (Tr. 208).

Plaintiff contends that he testified at the hearing that he still suffers with the same cognitive deficits, and that he lives in a highly structured environment that is made for people who suffer with traumatic brain injuries. (Tr. 34). According to plaintiff, he receives help paying bills and remembering appointments, and also receives therapies and counseling. (Tr. 34). Plaintiff asserts that he also attempts to work in exchange for living in this highly structured environment. Plaintiff testified that he attempts to work for four hours shifts (Tr. 35), but has problems getting up and going to work, resulting in him being late approximately 60% of the time. (Tr. 36). Plaintiff also testified that he loses his concentration after about 15 minutes and has to take many breaks during the day, and that he experiences memory problems as a result of his traumatic brain injury and loses focus in the middle of tasks. (Tr. 37-38).

Plaintiff asserts that the COO of Communicare, where plaintiff currently

resides, appeared at the hearing and testified as to plaintiff's ability to perform part-time work in the sheltered environment at the facility. Specifically, the COO testified that plaintiff shows up more than 30 minutes late for work approximately two to three days a week, and fails to follow policy and does not let staff know why he does not show up. (Tr. 47). Plaintiff also claims that he requires several breaks during his shifts.

According to plaintiff, considering his medical history, neuropsychological testing, and continued cognitive problems, he needs to be in a structured environment in order to maintain his current level of functioning. Plaintiff further contends that his medical records document that his brain injuries have caused him to suffer memory deficits, concentration problems, impulse control and poor judgment, among other symptoms. Plaintiff argues that these records are consistent with his testimony, and well as the first-hand testimony of his current structured work supervisor, and the ALJ should have found plaintiff fully credible and found that he was unable to work in any full-time sustained work environment.

Plaintiff argues, as his second claim of error, that the ALJ erroneously found plaintiff was capable of performing work at step five of the sequential analysis, because the ALJ's RFC assessment fails to include all of plaintiff's physical and mental limitations. Plaintiff argues that his medical records and supporting

testimony, as outlined above, show that he is unable to work.  Plaintiff contends

that here, there is an actual example of plaintiff's attempts to work while he lived

in a structured living facility.  However, the COO of the facility testified at the

hearing that plaintiff shows up more than 30 minutes late for work approximately

two to three days a week, requires several breaks during his four-hour shifts, and

fails to follow policy and does not let staff know why he will not be showing up

for work.  (Tr. 47).  Plaintiff argues that the failure of the ALJ to create an

accurate hypothetical which encompasses plaintiff's limitations does not constitute

"harmless error" and a reversal and immediate award of benefits is appropriate in

this case.  Plaintiff contends that the ALJ presented his inaccurate RFC to the

vocational expert and ultimately relied on these findings to make his decision that

the plaintiff was not disabled.  (Tr. 24).  Plaintiff argues, however, that during the

hearing, his attorney asked the vocational expert if plaintiff would be able to rest,

"several times, three or four times during the day for at least 50 minutes during the

day, would that preclude, I'm talking in addition to lunch and the normal morning

and afternoon breaks.  Would that preclude any work?"  (Tr. 56).  The vocational

expert testified that such a person would not be able to maintain competitive

employment.  (Tr. 56).

Plaintiff contends that his physical and mental limitations are not

accommodated by the RFC created by the ALJ, and because the ALJ relied  on the

RFC to make the final determination that plaintiff was not disabled, this decision cannot stand and the ALJ's decision must be reversed, or, at a minimum, remanded for further proceedings.

### C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ reasonably weighed plaintiff's credibility, and that plaintiff wishes the ALJ would have weighed the evidence differently is not a basis for remand.  The Commissioner asserts that the substantial evidence standard presupposes that there is a zone of choice within which the decision maker can go either way, without interference by the courts. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).  The Commissioner thus contends that even if there is substantial evidence in the record that would have supported an opposite conclusion, the ALJ's decision should be upheld so long as substantial evidence supported the conclusions reached by the ALJ.  *Collins v. Astrue*, 373 Fed. Appx. 552, 556 (6th Cir. 2010).  The Commission argues that the ALJ's decision should be affirmed because the ALJ made a reasoned and reasonable decision based on substantial evidence.

The Commissioner asserts that the ALJ recognized that plaintiff was in a serious car accident in 2000 and suffered a significant brain injury that caused cognitive deficits, and that those cognitive deficits would result in certain work-related limitations.  (20-21, 23).  According to the Commissioner, the ALJ

accounted for those limitations in his assessment of plaintiff's residual functional capacity. In evaluating Plaintiff's residual functional capacity, the Commissioner contends the ALJ reasonably found plaintiff's allegations of work-preclusive limitations were inconsistent with the record evidence, including evaluations by treating and consulting psychologists, as well as plaintiff's daily activities. (Tr. 21-23). The Commissioner contends that one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. Social Security Ruling (SSR) 96-7p, 1996 WL 374186 at *5 (July 2, 1996).

The Commissioner argues that the ALJ further relied on objective evidence, including imaging studies and the results of cognitive testing, in evaluating plaintiff's allegations. (Tr. 21-23). The Commissioner states that while objective evidence is not the only factor relevant to determining the credibility of a claimant's symptoms, it remains a "useful indicator" for the ALJ when evaluating the credibility of plaintiff's symptoms. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). The Commissioner contends that the ALJ recognized that plaintiff received intensive treatment and had numerous neuropsychological evaluations in

10

the years following the 2000 car accident, and that the ALJ relied on those evaluations in assessing plaintiff's credibility and residual functional capacity. The ALJ noted that evaluations from 2000 to 2003 showed improvement in plaintiff's cognitive functioning (Tr. 21, citing Tr. 318, 325), and also cited to plaintiff's normal test results on a series of intelligence and mental capacity tests performed in 2004 by Gordon Horn, Ph.D. (Tr. 21, citing Tr. 333-39). As the ALJ noted, those tests showed plaintiff had a full scale IQ of 110, placing him in the average to above average range. (Tr. 21, citing Tr. 333-34). Further, plaintiff demonstrated adequate memory, and plaintiff's language, spatial processing, and visual-perceptual functioning were within normal limits. (Tr. 21, citing Tr. 334). The Commissioner continues that the ALJ also found that social cognition test results were largely within normal limits. (Tr. 21, citing Tr. 336). The Commissioner contends that the ALJ reasonably found these normal test results were inconsistent with plaintiff's allegations of work-preclusive cognitive difficulties. The Commissioner further asserts that the ALJ also reasonably found these normal test results, along with other factors, were inconsistent with Dr. Horn's opinion that plaintiff would have difficulties performing certain tasks and that plaintiff's cognitive deficits would have serious implications for a positive outcome. (Tr. 21, 23, citing Tr. 337, 349-60). The Commissioner states that, as the ALJ noted, while Dr. Horn opined that there would be serious implications for

a positive outcome, he also noted that plaintiff had recovered "remarkably well."

(Tr. 21, citing Tr. 337).

According to the Commissioner, the results of a November 2010

consultative psychiatric evaluation further supported the ALJ's assessment of

plaintiff's credibility and residual functional capacity.  (Tr. 21, citing Tr. 217-22).

The Commissioner notes that examining psychologist, Nick Boneff, Ph.D., found

that plaintiff was calm, relaxed, cooperative, polite, logical, organized, and goal

directed, his speech was clear and articulate, and he made good eye contact.  (Tr.

218).  Dr. Boneff further noted that plaintiff did not have any problems with visual

or spatial organization, and that his short-term working memory was intact.  (Tr.

21, citing Tr. 219-20).  And, tests administered by Dr. Boneff indicated plaintiff

had average to low average intellectual functioning, including a full scale IQ score

of 84.  (Tr. 21, citing Tr. 219-20).  Dr. Boneff diagnosed plaintiff with "cognitive

disorder, secondary to traumatic brain injury, *resolved, no current symptoms*," and

assigned plaintiff a Global Assessment of Functioning (GAF) score of 55-60,

indicating only moderate symptoms or moderate difficulties in functioning.  (Tr.

22, citing Tr. 220) (emphasis added).  The Commissioner asserts that Dr. Boneff

opined, based on his evaluation and review of certain records, that plaintiff

retained the ability to perform work-related activities on a sustained basis.  (Tr. 22,

citing Tr. 220).

12

The Commissioner argues that the ALJ further found plaintiff's daily activities were inconsistent with his allegations of work-preclusive limitations, and that his activities supported the ALJ's assessment of his residual functional capacity.  (Tr. 22).  The ALJ recognized that plaintiff lived in an apartment affiliated with Communicare, LLC, a rehabilitation facility for people with brain injuries (Tr. 22, 34, 164), and that plaintiff said the staff at Communicare helped him with transportation, shopping, and remembering appointments.  (Tr. 22, 34, 40).  Plaintiff also worked approximately four hours per day at jobs provided through Communicare (*e.g.*, working on a newsletter, maintaining an art gallery), and also testified that he attended counseling and other therapies, like art therapy, at Communicare.  (Tr. 22, 35).  The Commissioner contends that the ALJ reasonably found that while plaintiff lived in a structured environment, he nonetheless demonstrated that he was generally independent in his daily life.

The Commissioner states that plaintiff argues that the highly structured nature of Communicare, notably the availability of 24 hour emergency care and supervisory checks every two hours, weighs in favor of finding his allegations credible.  According to the Commissioner, plaintiff explained that the emergency service provided is the ability to "call somebody and they would come right over" (Tr. 35), and plaintiff suggests that this level of supervision was medically required.  The Commissioner counters that while plaintiff lived and worked in a

13

structured environment, the evidence suggests that such arrangements were made to avoid incarceration, not out of medical necessity. (*See* Tr. 205-16). Specifically, in a letter to the Oakland County Courts, Dr. Horn proposed that plaintiff be re-admitted to Communicare in lieu of incarceration (noting that plaintiff previously had been discharged from Communicare in 2008). (Tr. 213-16). Dr. Horn suggested that plaintiff would be better served by engaging in a neurobehavioral facility, rather than incarceration, and recommended that plaintiff be considered for an inpatient residential treatment program to meet his needs and "to provide consistency and continued feedback to the courts for their oversight." (Tr. 213). The Commissioner contends that it appears the court accepted Dr. Horn's proposal, including ongoing daily oversight. (Tr. 205-12). Indeed, the Commissioner continues, what appears to be a court-mandated progress report describes plaintiff's supervision level at Communicare as being court ordered: "[Plaintiff] continues to receive 24 hour emergency supervision and is checked on by Communicare staff every 2 hours from 7am until 11pm. He has been ordered to wear a tether or ankle bracelet, and is restricted to remain at his apartment or at the Communicare Royal Oak office by court order." (Tr. 208). The Commissioner contends that Dr. Horn's proposal to the court also suggested that plaintiff's supervision at work was a function of court order, not medical necessity. (Tr. 214) ("Work involvement on campus will be provided up to 6 hours per day. This work

14

will be provided on campus and under supervision."). Therefore, the Commissioner concludes, plaintiff's argument that the his mental condition mandated a structured living and work environments lacks merit.

The Commissioner also states that plaintiff argues that the ALJ's hypothetical question to the vocational expert should have reflected the mental limitations he alleged at the hearing. The Commissioner argues in response that an ALJ is not obliged to incorporate unsubstantiated complaints into his hypothetical questions to the vocational expert. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact."); *Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (unsubstantiated complaints need not be included in the hypothetical question). The Commissioner contends, as discussed above, that the ALJ reasonably discredited plaintiff's allegations and, thus, did not need to include such limitations in hypothetical questions posed to the vocational expert. The Commissioner argues that while plaintiff may disagree with the ALJ's credibility assessment, the ALJ's assessment was well within the zone of reasonable choices, *see Mullen v. Bowen*, 800 F.2d 535, 595 (6th Cir. 1986), and the substantial evidence standard presupposes that there is a zone of choice within

15

which the decision maker can go either way, without interference by the courts.
*Blakley*, 581 F.3d at 406.  The Commissioner further contends that the ALJ

provided a reasonable explanation for why he discredited plaintiff's allegations

and that explanation was supported by substantial evidence.  The Commissioner

concludes that because the ALJ made a reasoned and reasonable decision based on

substantial evidence, the ALJ's weighing of plaintiff's credibility should be

afforded its due deference and the ALJ's decision should be affirmed.  *See Mullen*,

800 F.2d at 595; *Walters*, 127 F.3d at 531.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

16

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted) (citing, *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

19

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed

to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

21

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.      Analysis and Conclusions

#### 1.      The ALJ's credibility determination is supported by substantial evidence

Plaintiff claims that the ALJ's credibility analysis is flawed and is not based on a proper characterization of record evidence. However, credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)

(citation omitted).  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible.  SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R. § 404.1529.  Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir.

2011).

In the view of the undersigned, the ALJ's finding that the objective record evidence does not support plaintiff's claims of disabling limitations is supported by substantial evidence. The ALJ's credibility determination is thorough, detailed and amply supported by the record. The ALJ properly looked at the medical opinion evidence, including the evaluations by treating and consulting psychologists, and plaintiff's daily activities as undermining the claimed severity of plaintiff's symptoms. The ALJ acknowledged that plaintiff was in a serious car accident in 2000 and suffered a brain injury that caused cognitive defects. (Tr. 21). The ALJ further recognized that following the injury, plaintiff has had numerous neuropsychological evaluations, noting that "Between 2000 and 2003, Dr. David Cowan (9F) evaluated the claimant several times. Although the claimant presented with impairments in memory, attention, and executive functioning, Dr. Cowan did note improvements, particularly in attentional ability and visual memory. (9F/9, 16)." (Tr. 21). This finding is supported by the record evidence which notes: in October 2000, that plaintiff continues to demonstrate "mild impairments on tasks of attention" and "[w]ith regard to executive cognitive functioning, [plaintiff] continues to have difficulty shifting set" (Tr. 310-14); notes, in February 2001, improvement in "areas of motor, attentional ability, memory, verbal fluency, and executive functioning" with "[a]ttentional ability . . .

24

improved to average levels of performance" and current findings in the area of executive function "in the below average to mild impairment range" (Tr. 316-20); and notes, in November 2002, continuing improvement and a diagnosis of "[c]ognitive defects, mild, residual associated with severe traumatic bring injury." (Tr. 321-25).

The ALJ further recognized that Dr. Horn evaluated plaintiff in 2004 and administered a variety of tests, and found that "the results . . . did not suggest a level of limitation greater than the residual functional capacity." (Tr. 21). As the ALJ noted, although Dr. Horn suggested that plaintiff would still have serious implications for a positive outcome, plaintiff has recovered "remarkably well" and obtained a Full Scale IQ score of 110, placing him in the average to above average range, his language, spatial processing and visual-perceptual functions were all within normal range, his memory testing performance was adequate, and his social cognition testing was within normal limits for most of the subtests. (Tr. 21, 333-39).

The ALJ also found that the consultative examiner, Dr. Nick Boneff, did not suggest limitations greater than those found by the ALJ. (Tr. 21-22). Dr. Boneff conducted a consultative examination of plaintiff in November 2010 and found that plaintiff obtained a Full Scale IQ score of 84, placing him in the average to low average range, and that plaintiff did not have any problems with visual or

25

spatial organization, his short-term memory was intact and there were no indications of neurologic organic disorder.  (Tr. 21-22, 217-21).  Dr. Boneff stated that plaintiff had a "history of treatment of closed head injury and mild cognitive impairments which appeared to be generally resolved," he is independent in his activities of daily living, and gets along well with family, friends and co-workers, and the doctor opined that plaintiff should be able to do work related activities at a sustained pace.  (*Id.*).  The ALJ gave this opinion some weight and found it consistent with the totality of the record.  Plaintiff failed to address Dr. Boneff's opinion in his brief.[1]

Finally, the ALJ also found that "[t]here is noting to suggest from [plaintiff's] activities of daily living that he is any more limited than the residual functional capacity indicates."  (Tr. 22).  The ALJ reasoned that although plaintiff lives in a structured environment, he attends counseling and therapy and work, and is generally independent in his daily life, as he cooks and cleans for himself and helps care for his son, and enjoys playing pool, watching television and writing.

---

[1] The undersigned further notes that plaintiff did not address Dr. Horn's July 2011 opinion or the opinions of Dr. Deering or Dr. Zuckerbrod, and that he offers no argument regarding the weight the ALJ assigned any of those opinions.  Accordingly, plaintiff is deemed to have waived any argument regarding these issues.  *See Thomas v. Halter*, 131 F. Supp.2d 942, 945 (E.D. Mich. 2001) ("Plaintiff should not expect the Court to search the ALJ's ruling in support of Plaintiff's argument; i.e., he should not anticipate that the Court will do what he could and should have done for himself.") (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (reasoning that "judges are not like pigs, hunting for truffles buried in" deposition transcripts)).

26

(Tr. 22, citing Tr. 164-71, 205-21).  The ALJ recognized that although plaintiff does not pay all his bills, he does pay his phone bill and is working towards paying more utilities.  (*Id.*).  The ALJ also noted that although the neuropsychological evaluations did not indicate any social limitations, plaintiff testified that he has had problems in the past cooperating with people in his program and difficulty dealing with stressful situations, and accordingly the ALJ imposed social limitations in the RFC.  (Tr. 22).  The ALJ properly considered this evidence in assessing plaintiff's credibility.  *See Walters*, 127 F.3d at 531; 20 C.F.R. § 404.1529(c)(3)(I).

Although plaintiff argues that the highly structured nature of the Communicare program weighs in favor of his credibility, the undersigned agrees with the Commissioner that it appears from the record that these arrangements were made, at least in part, to avoid incarceration, not out of medical necessity. (Tr. 205-16).  Dr. Horn proposed in his letter to the Oakland County Courts that plaintiff be readmitted to Communicare in lieu of incarceration (noting that plaintiff previously had been discharged from Communicare in 2008) to meet his needs and "to provide consistency and continued feedback to the courts for their oversight."  (Tr. 213-15).  Dr. Horn subsequently reported that "[Plaintiff] continues to receive 24 hour emergency supervision and is checked on by Communicare staff every 2 hours from 7 am to 11 pm.  He has been ordered to

wear a tether or ankle bracelet, and is restricted to remain at his apartment or the Communicare Royal Oak office *by court order*."  (Tr. 208, emphasis added).

Plaintiff disagrees with the ALJ's evaluation of this evidence, but it is the province of the ALJ to make credibility determinations and plaintiff provides no compelling reason to disturb the ALJ's credibility determination.  The ALJ credited the physician's assessments and diagnoses, evaluated the extent to which the severity of plaintiff's symptoms could reasonably be accepted as consistent with the medical evidence, and found plaintiff's testimony about the extent of his limitations not fully credible.  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531.  The undersigned concludes that there is substantial evidence in the record to support the ALJ's credibility findings and conclusion that plaintiff's impairments do not preclude him from performing the identified jobs.

**2.    The ALJ's RFC determination and Step Five finding are supported by substantial evidence**

Plaintiff complains that each element of the hypothetical question posed to the vocational expert does not accurately describe plaintiff in all significant, relevant respects and that the vocational expert's testimony at the hearing

therefore does not constitute substantial evidence supporting the ALJ's determination that plaintiff is not disabled.  Although plaintiff phrases this as a Step Five finding, the undersigned concludes that plaintiff is attempting to refute the RFC finding via a purported Step Five error.  *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

　　As the Commissioner accurately recognizes, plaintiff's argument concerning the hypothetical posed to the vocational expert essentially mirrors his argument regarding the ALJ's credibility assessment, and plaintiff broadly claims that the "medical records and supporting testimony show that he is unable to work."  To the extent plaintiff is arguing that the ALJ's RFC determination is in error because that determination does not include plaintiff's subjective testimony, that argument is unavailing, as "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  The undersigned further notes that the ALJ discussed

and evaluated all the record evidence, including the opinion testimony of each of the treating and examining doctors, and explained that the medical evidence of record does not suggest limitations greater than those articulated in the RFC.  The ALJ explained that Dr. Horn's opinion that plaintiff would have serious implications for a positive outcome are inconsistent with the doctor's own findings, as well as the record as a whole.  (Tr. 21-23).  The ALJ accommodated plaintiff's physical and mental limitations by restricting him to unskilled work with only occasional superficial contact with the public and only occasional interaction with co-workers and supervisors, work with no concentrated exposure to hazards such as heights and machinery, and no work where depth perception would be required.  (Tr. 20).  Plaintiff argues that the vocational expert testified at the hearing that a person requiring several breaks during the day totaling at least 50 minutes a day would be precluded from competitive employment.  However, plaintiff has failed to cite to any record evidence in support of such a limitation, and it is well-settled that an ALJ is not obliged to incorporate unsubstantiated complaints into his hypothetical questions to the vocational expert.  *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  Thus, while the record evidence indicates that plaintiff does have severe impairments, as noted by the ALJ, it does not specifically support plaintiff's testimony regarding the

30

extent of his limitations.  Indeed, as explained above, there is evidence to support the ALJ's finding that plaintiff was not fully credible.

Because the ALJ reached his decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonably minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2006) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 28, 2014                              s/Michael Hluchaniuk
                                                 Michael Hluchaniuk
                                                 United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on July 28, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kelie C. Schneider, Thomas J. Bertino, Meghan O'Callaghan, Susan K. DeClercq.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov